1  **O'HAGAN MEYER LLP**
   SUMY KIM, SB# 290082
2      Email: SKim@ohaganmeyer.com
   WILLIAM H. BOHANNON, SB# 319437
3      Email: WBohannon@ohaganmeyer.com
4  One Embarcadero Center, Suite 2100
   San Francisco, California 94111
5  Telephone: 415.604.0124

6  Attorneys for Defendant
   TOTAL SAFETY U.S., INC.
7

8                      UNITED STATES DISTRICT COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  HORACIO MAYA, JR., an individual, | Case No. |
| 12         Plaintiff, | [*Removed from the Superior Court of California, County of Santa Clara County, Case No. 25CV460080*] |
| 13  vs. | |
| 14  TOTAL SAFETY U.S., INC., a Delaware corporation; and DOES 1 through 10, inclusive, | **DEFENDANT TOTAL SAFETY U.S., INC.'S NOTICE OF REMOVAL** |
| 15 | |
| 16         Defendant. | [Filed concurrently with Declaration of William H. Bohannon; Declaration of Erin Cohen; and Request for Judicial Notice] |
| 17 | |
| 18 | Action Filed in State Court: February 27, 2025 |

TO THE UNITED STATES DISTRICT COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant Total Safety U.S., Inc., (the "Defendant") respectfully file this Notice of Removal ("Notice") to remove the above-captioned matter, filed by Plaintiff Horacio Maya, Jr. ("Plaintiff"), from the Superior Court of California, County of Santa Clara, Case No. 25CV460080 to the United States District Court for the Northern District of California. This Notice is based on the grounds of diversity jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441, and, separately and alternatively, pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1453. This Notice is timely under 28 U.S.C. § 1446. This Notice is supported by the Declarations of Erin Cohen and William H. Bohannon, and Request for Judicial Notice, and attached exhibits, filed concurrently.

## RESERVATION OF RIGHTS

By filing this Notice, the Defendant does not waive, and expressly reserve, all of its objections and defenses to this action including, especially and without limitation, their right to object to personal jurisdiction and venue, their right to compel this matter to arbitration, their right to enforce any waivers agreed to by Plaintiff, and any objections to the Complaint which they may interpose pursuant to Fed. R. Civ. P. 12.

The Defendant provides the following information in support of removal:

I. BACKGROUND

1. On February 27, 2025, Plaintiff filed an unverified class action complaint for damages in the Superior Court of the State of California, County of Santa Clara, entitled *HORACIO MAYA, JR., individually, and on behalf of all others similarly situated v. TOTAL Safety U.S., Inc., et al.* Case No. 25CV460080. A true and correct copy of the Operative Complaint is attached to the Declaration of William H. Bohannon ("Bohannon Decl.") as **Exhibit 1**.

2. Putting aside any possible issues as to the efficacy of service, the earliest date on which it is possible that Defendant was served with summons and complaint is March 18, 2025. (Bohannon Decl., ¶ 2.)

3.  The Complaint alleges eight (8) causes of action against Defendant in connection with the core allegation (which Defendant denies) that, under California law, Plaintiff was not paid for all hours he worked.  The causes of action are as follows: (1) failure to pay minimum and straight time wages; (2) failure to pay overtime wages; (3) failure to provide meal periods; (4) failure to authorize and permit rest periods; (5) failure to timely pay wages at termination; (6) failure to provide accurate itemized wage statements; (7) failure to indemnify employees for expenditures; and, (8) unfair business practices.  *See generally*, Complaint.

4.  Plaintiff seeks to represent "All persons who worked for any Defendant in California as an hourly-paid or non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice to the Class is sent." Complaint, ¶ 24.

II.  REMOVAL IS SUBJECT TO A LIBERAL PLEADING STANDARD

5.  Notices of removal are subject to the same general pleading standards applicable to complaints pursuant to Fed. R. Civ. P. 8(a), and as such notices need not attach evidence nor meet a burden of proof but rather need contain only a "'short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating CO. LLC v. Owens*, 135 S. Ct. 547, 551-54 (2014) (quoting 28 U.S.C. § 1446(a)). This governing principle also applies to a removing party's allegations as to the amount in controversy.  *Id.; See also Garnett v. ADT LLC*, F. Supp. 3d 1332, 1334 (E.D. Cal. 2015). Only if the court or another party contests the allegations of removability must the removing party submit evidence supporting its allegations, whereupon removability is decided under a preponderance of the evidence standard.  *Dart Cherokee*, 135 S.Ct. at 553-54.

III.  REMOVAL IS PROPER BECAUSE THIS COURT HAS DIVERSITY JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441

6.  A civil action may be removed from a state court to a federal district court where the action is pending if the district court has original jurisdiction over the action. 28 U.S.C. § 1441(a).

7.  This action is a civil action over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a) because it is a civil action between citizens who are of different states and

the matter in controversy for the named Plaintiff exceeds $75,000, exclusive of interest and costs. Thus, the action is removable to this Court under 28 U.S.C. § 1441(a).

### A. Complete Diversity Exists Between the Parties

8. Section 1332 requires complete diversity, i.e., that "the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 67-68 (1996).

9. <u>Plaintiff's Citizenship</u>. For diversity purposes, a person's state "citizenship" is determined by the state in which they are domiciled, and in turn a person's domicile is the place they reside with the intention to remain or to which they intend to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). The place of residence is prima facie the domicile. *Ayala v. Cox Automotive, Inc.*, 2016 U.S. Dist. LEXIS 153617, at *10 (C.D. Cal. Nov. 2016) (allegation that Plaintiff "is, and at all times mentioned in the Complaint was," a California resident "gives rise to the presumption that Plaintiff is a California citizen") (citing *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10 Cir. 1994)). Here, Plaintiff alleges in the Complaint that he is a resident of California (Complaint ¶ 7), and thus a citizen of California for the purposes of determining citizenship.

10. <u>Citizenship of the Defendant</u>: For diversity purposes, a corporation "shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The phrase 'principal place of business' "refers to the place where the corporation's high-level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010). This is the corporation's "nerve center." *Id*. at 93. "[I]n practice [this] should normally be the place where the corporation maintains its headquarters…" from which the corporation's business activities are directed, controlled, and coordinated. *Id*. Here, the Defendant is incorporated under the laws of the State of Delaware with its principal place of business in Pasadena, Texas. *See* Declaration of Erin Cohen ("Cohen Decl.") ¶¶ 2-4. Thus, for purposes of diversity analysis, Defendant is a citizen of Texas and Delaware. Accordingly, there is diversity with respect to Plaintiff and Defendant.

11. <u>Doe Defendant's Citizenship</u>. The citizenship of Defendants Does 1 through 10 may be ignored for removal purposes. *See* 28 U.S.C. § 1441(b)(1); *see also Soliman v. Philip Morris Inc.*, 311 F.3d 966, 971 (9th Cir. 2002) ("citizenship of fictitious defendants is disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant").

12. Accordingly, the Complaint on its face indicates that there is complete diversity of citizenship between Plaintiff and Defendant.

### B. The Amount in Controversy Exceeds $75,000

13. Where, as here, "the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014). To establish the amount in controversy, a notice of removal "need not contain evidentiary submissions." *Id*. Rather, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 89. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). The amount in controversy is determined from the allegations or prayer of the complaint. *See Dart Cherokee*, 574 U.S. at 87; *see also, Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (2018).

14. Economic damages, non-economic damages, general damages, attorneys' fees and costs, the cost of complying with an injunction, and punitive damages all are included in determining the amount in controversy. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-1156 (9th Cir. 1998); *see also, Chavez*, 888 F.3d at 416.  Here, without conceding that Plaintiff is entitled to recover any damages from the Defendant, for purposes of this analysis only, at least $75,000 is at stake in this litigation as established through the following elements:

  a. <u>Plaintiff's Prayer for Compensatory Damages</u>: As part of his lawsuit, Plaintiff seeks compensatory damages in connection with the first, second, third, fourth, and seventh causes of action.  Complaint, Prayer for Relief, ¶¶ 4, 5, 11, 12, 17, 22, & 38.  Plaintiff only makes general allegations regarding the extent to which he was denied overtime, regular

wages, minimum wages, and rest and meal breaks, but that such occurred throughout his employment. Complaint ¶ 14. Plaintiff does allege specifically that he always worked more than eight hours a workday and forty hours a workweek. Complaint at ¶ 13. Per Defendant's records, Plaintiff's final pay rate was $35 per hour. Cohen Decl. at ¶ 7. Thus, Plaintiff could plausibly be claiming for, at a low estimate, that assumes the allegations in the Complaint as true: for 2022, $14,332.50 (1 hour per week for the allegedly denied regular wages at $35 per hour for 39 weeks [based upon allegedly working from April 2022, to October 2024, per the Complaint at ¶ 7] [$1,365 total]; 2 hours of wage premiums [e.g., per Labor Code § 226.7] for one instance of the alleged denied rest break and denied meal break per week [$2,730 total]; and $10,237.50 based upon the allegations that there was daily unpaid overtime); for 2023, $19,110 (following the same analysis but with 52 workweeks); and, for 2024, $15,802.50 (following the same analysis but with 43 workweeks). Giving a total of $49,245.00. This can be coupled with an estimate of the alleged waiting time penalty at $8,400 ($35 per hour for 8 hours per day and 30 days [i.e., per Labor Code § 203]), and the alleged wage statement penalties of an amount not to exceed $4,000 (but that could plausibly be estimated at $2,350 [2 pay stubs * 11 months + $50 initial penalty + $100 second penalty] per Labor Code § 226), giving a total estimate of $59,995.00[1] that could further increase based upon the alleged failure to reimburse business expenses, damages based upon Plaintiff's claim of unpaid minimum wages, the costs associated with complying with Plaintiff's sought injunctions, and the sought restitution for unfair business practices. Moreover, this comports with Plaintiff's filing of an unlimited civil case that demands over $35,000.

    b.  <u>Plaintiff's Attorneys Fees</u>: As part of his lawsuit, Plaintiff seeks attorneys' fees in association with every cause of action. Complaint, Prayer for Relief, ¶¶ 9, 14, 19, 24, 29, 35, 40, and 45. In the Ninth Circuit, the amount in controversy includes future attorney's fees. *See Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018) ("a court must include future attorneys' fees recoverable by statute or contract when

---

[1] While Defendant is not aware of any evidence supporting Plaintiff's claim of unpaid minimum wages, in support of this Notice of Removal, Defendant file concurrently herewith a request that the Court take judicial notice of the California minimum wage for 2021, 2022, 2023, 2024, and 2025, in the event such becomes pertinent. *See*, Request for Judicial Notice in Support of Notice of Removal.

assessing whether the amount-in-controversy requirement is met."). A removing defendant can establish the likely attorneys' fees for purposes of determining the amount in controversy by identifying cases in which the plaintiff's counsel has requested similar fees. *See Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 n.4 (9th Cir. 2020). Here, with a purported class of at least 159 individuals (Cohen Decl. at ¶ 5), the attorneys' fees that would plausibly be allocated to Plaintiff in the event of his success would likely easily exceed $20,000 after trial.

15. Based on the above, Plaintiff's pleaded assertions and theories of recovery (including attorneys' fees) establish the amount in controversy exceeds $75,000, as his aggregated requests for monetary relief will far exceed $75,000 exclusive of interest and costs. Although Defendant denies Plaintiff's claims of wrongdoing, deny that a class can be certified, and deny all claims for relief. By removing this matter, Defendant does not waive, and, instead, reserves any rights it may have, including, without limitation, all available arguments and defenses.

## IV.   REMOVAL IS PROPER UNDER THE CLASS ACTION FAIRNESS ACT

16. Plaintiff purports to bring the State Court Action "individually as well as on behalf of each and all other persons similarly situated…" (Complaint, ¶ 22.)

17. 28 U.S.C. § 1332(d)(2) vests with federal district courts "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which (A) any member of a class of plaintiffs is a citizen of a State different from any defendant."

18. CAFA gives this Court original jurisdiction over civil class action lawsuits in which any member of the putative class is a citizen of a state different from any defendant and in which the matter in controversy exceeds the sum or value of $5 million, exclusive of interest costs. 28 U.S.C. § 1332(d)(2). CAFA authorizes removal of such actions in accordance with 28 U.S.C. § 1446.

19. CAFA reflects a "strong preference" to resolve class actions in federal court. *See, Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) (quoting S. Rep. No. 109-14, p.43 (2005).

20. This suit satisfies all the requirements under CAFA for federal

jurisdiction because (1) this is a putative class action; (2) the proposed class exceeds 100 members; (3) members of the proposed class have a different citizenship from Defendant; and (4) the amount in controversy exceeds $5,000,000. *See*, 28 U.S.C. § 1332(d).

### A. "Minimal Diversity" Exists Under CAFA

21. CAFA's diversity requirement is satisfied when at least one plaintiff is a citizen of a state in which none of the defendants are citizens, when one plaintiff is a citizen of a foreign state and one defendant is a U.S. citizen, or when one plaintiff is a U.S. citizen, and one defendant is a citizen of a foreign state. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453(a).

22. Plaintiff is a citizen of the State of California. Complaint at ¶ 7. The putative class purports to consist solely of individuals who worked in California. *Id.* at ¶ 24.

23. Defendant is not a citizen of the State of California. *See* Cohen Decl. at ¶¶ 2-4. Further, the citizenship of Does 1 through 10 are disregarded for the purposes of determining diversity jurisdiction and cannot destroy the diversity of citizenship between parties of this action. 28 U.S.C. § 1441(b)(1); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998).

24. Accordingly, the "minimal diversity" required to remove under CAFA is established.

### B. The Proposed Class Membership is Sufficiently Large

25. CAFA's requirement that proposed class membership be no less than 100 is satisfied here. *See* 28 U.S.C. § 1332(d)(5)(B). First, Plaintiff contends that the putative class has more than 40 members. Complaint at ¶ 27(a). Additionally, according to Defendant's business records, the putative class may contain approximately 159 members within the claimed four-year statue of limitations period. Cohen Decl. at ¶ 5.

26. Defendant does not waive any objections to Plaintiff's class definition and does not concede that Plaintiff can successfully certify a class based on the Complaint.

#### a. The Amount in Controversy Exceeds $5 Million

27. 28 U.S.C. § 1332(d) authorizes removal of class action cases where, among other factors mentioned above, the amount in controversy for all class members exceeds $5

1  million. Plaintiff's Complaint does not specify the total amount of monetary relief sought by the
2  putative class. Notwithstanding Plaintiff's failure to specify the total amount of monetary relief
3  sought, CAFA authorizes the removal of class actions where among other factors mentioned
4  above, the aggregated amount in controversy for all potential class members exceeds $5 million.
5  *See* 28 U.S.C. § 1332(d); *Muniz v. Pilot Travel Centers LLC*, 2007 U.S. Dist. LEXIS 31515, *1-2
6  (E.D. Cal. May 1, 2007) (finding removal of action similar to the instant action proper under the
7  CAFA). In determining the amount in controversy for CAFA, all potential damages based on
8  pled claims, as well as attorneys' fees are properly included. *See Guglielmino v. McKee Foods
9  Corp.*, 506 F.3d 696, 701 (9th Cir. 2007).

10        28.    Where the plaintiff alleges that a defendant has "'adopted and maintained
11  uniform policies, practices and procedures' that cause the purported violations of California's
12  [laws] . . . [i]t is not unreasonable to assume that when a company has unlawful policies and
13  they are uniformly 'adopted and maintained,' then the company may potentially violate the law
14  in each and every situation where those policies are applied." *Mejia v. DHL Express (USA),
15  Inc.,* 2015 U.S. Dist. LEXIS 67212, *10 (C.D. Cal. May 21, 2015). In that instance, "a 100%
16  violation rate is not an unreasonable assumption to use in estimating the amount in controversy
17  in light of the allegations in the [complaint]." *Id*. at *10-11. Here, Plaintiff summarily alleges
18  that Plaintiff and "some" of the putative class members were not paid for all hours worked,
19  "including minimum, straight time, and overtime wages," were denied rest and meal breaks,
20  were denied accurate wage statements, were consistently not paid all final wages due at
21  termination, were not provided proper itemized wage statements, and incurred expenses that
22  were not indemnified by Defendant. Complaint at ¶¶ 15-21. It is further alleged that "[a]t all
23  times relevant" Plaintiff and "some" of the Class worked in excess of eight hours a day.
24  Complaint at ¶ 44.

25        29.    While Defendant denies Plaintiff's claims of wrongdoing, and that Plaintiff is
26  entitled to any requested relief, the facial allegations in Plaintiff's Complaint and the total
27  amount of wages, penalties, attorney's fees, injunctive relief, and other monetary relief at issue
28  in this action are in excess of this Court's jurisdictional minimum. *Saulic v. Symantec Corp.*,

2007 U.S. Dist. LEXIS 96640, *22-25 (C.D. Cal. 2007) (finding jurisdictional limits were satisfied under CAFA after considering facts presented in notice of removal, including defendant's declarations, along with plaintiff's allegations); *see also Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964-965 (9th Cir, 2020) (holding that defendant-employer's declaration from its Chief Information Officer explaining his opinion that the amount in controversy exceeds CAFA's $5 million jurisdictional threshold raised plausible allegations of jurisdictional elements sufficient for removal to federal district court as evidentiary submissions were not required).

   b.   Evidence Supporting the Amount in Controversy

30. Plaintiff summarily seeks to include all individuals who worked for Defendant in California on an hourly or non-exempt basis within the statutory periods. *See generally*, Complaint at ¶ 24.

31. For purposes of computing the amount in controversy, Defendant assumes, for arguments sake only, that Plaintiff can prove his eighth cause of action of unfair competition, thereby arguably increasing the statute of limitations period to four years for claims pertaining to unpaid wages. Cal. Business & Professions Code § 17200, *et seq.* Based on an initial review of Defendant's business records, which is subject to later refinement and/or correction, it appears that the putative class potentially includes approximately 159 members during the alleged class period of February 27, 2021, through April 4, 2025. Cohen Decl. at ¶ 5.

   1.   Unpaid Minimum and Overtime Wages

32. Plaintiff's first and second causes of action allege that Defendant failed to pay Plaintiff, and the putative class, minimum and straight wages, and overtime wages, respectively, during the statutory period. Complaint, ¶¶ 31-40, 41-49.

33. During the putative class period of February 27, 2021, through April 4, 2025, Defendant employed approximately 159 individuals in CA, with an average, estimated hourly pay of $24.77, and provided approximately 19,915 paystubs on a bi-weekly pay schedule. Cohen Decl. at ¶ 8. According to this, it can be approximated that there were 39,830 work

weeks worked by the putative class members during the putative class period of February 27, 2021, through April 4, 2025. If each putative class member was denied half an hour a week in regular wages, and two hours in overtime wages every workweek (per the allegations in the Complaint that class members worked over eight hours every day, Complaint at ¶ 44) we find estimated damages (assuming the Complaint to be accurate) totaling, at least $3,453,061.85. This is based upon: (1) estimated unpaid regular wages totaling $493,294.55 (average hourly rate of $24.77 * 0.5 hours * 39,830 work weeks = $493,294.55); and (2) 2 hours of unpaid overtime per week for a total of $2,959,767.30 (1.5 * $24.77 * 39,830 work weeks * 2 hours = $2,959,767.30). This calculation does not include any possible damages for the alleged minimum wages.

### 2. Rest Period and Meal Period Claims

34. Plaintiff's third and fourth causes of action are for rest period and meal period violations, respectively. Complaint, ¶¶ 50-53, 54-57.

35. Assuming that each individual is entitled to just one additional hour of pay for noncompliant rest periods and one additional hour of pay for missed meal periods during the statutory period, the plausible liability is in excess of $1,973,178.20 ([2*$24.77*39,830 weeks] = $1,973,178.20).

### 3. Waiting Time Penalties

36. Plaintiff's fifth cause of action seeks to recover waiting time penalties under Labor Code § 203, for purported violations of Labor Code §§ 201 and 202.

37. Based upon the average wage of $24.77, the 30-day waiting time penalty would be $5,944.80 (30*8*$24.77). *See* Labor Code § 203. There were an estimated 116 terminations amongst the class members (Cohen Decl. at ¶ 6), which would give $689,596.80 in related penalties (116*5,944.80), assuming that all such terminations involved a failure to pay all owed wages (per the allegations in the Complaint at ¶ 61).

### 4. Restitution for Unfair Business Practices

38. Additionally, as was mentioned above, the Complaint's eighth cause of action seeks restitution for unfair business practices. Such arguably extends the statute of limitations

period to four years for claims pertaining to unpaid wages. These plausible damages are already reflected in the above analysis as part of the estimated 39,830 workweeks.

### 5. Claims That Cannot Be Reasonably Determined

39. There are a number of causes of action that simply lack sufficient allegations to make a plausible estimate. First, the seventh cause of action seeks indemnification for expenditures, but there are no allegations that provide any estimate of what this expenditure was for, or even how much it was.

40. Additionally, Plaintiff alleges labor code penalties, that specifically do not apply to every class member, namely the fifth cause of action for failure to pay wages at time of discharge (discussed above) and the sixth cause of action for failure to provide accurate wage statements.

41. Similarly, Plaintiff's sixth cause of action alleges that Defendant failed to provide accurate itemized wage statements in violation of California Labor Code § 226, entitling Plaintiff and the putative class to penalties not to exceed $4,000 per aggrieved employee. Complaint at ¶ 71. The Complaint alleges that, at least, gross wages and net wages were inaccurate (Complaint at ¶ 67), such a deficiency would make every subsequent wage statement inaccurate as well. However, there is a similar issue that it is unclear how many wage statements are claimed to be inaccurate and for how many of the class members.

42. While the above cannot be plausibly determined, the allegations in the Complaint and within the Cohen Decl. are sufficient to estimate a plausible amount in controversy of $6,115,836.85, well in excess of the required $5 million under CAFA. The table below summarizes the above conservative calculations of minimum plausible liability should Plaintiff succeed in proving his claims on a class-wide basis. Notably this does not include sums for attorneys' fees (which Plaintiff claims as to every cause of action), the costs associated with complying with injunctions the Complaint seeks, or allocations for the vaguely alleged causes of action discussed above.

\\\

\\\

| Claims | Potential Minimum Amount in Dispute |
|---|---|
| Overtime Wages | $2,959,767.30 |
| Rest and Meal Periods | $1,973,178.20 |
| Regular Wages | $493,294.55 |
| Waiting Time Penalties | $689,596.80 |
| Total | $6,115,836.85 |

43.     Although Defendant denies Plaintiff's claims of wrongdoing, deny that a class can be certified, and deny all claims for relief, Defendant notes that facial allegations in the Complaint seek a total amount of monetary relief (in the form of damages, penalties, attorneys' fees, and other relief) for Plaintiff and the putative class in excess of $5 million, exclusive of costs and interest, as required under CAFA.

44.     By removing this matter, Defendant does not waive, and, to the contrary, reserves any rights it may have, including, without limitation, all available arguments and defenses. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

V.     **DEFENDANT HAS SATISFIED ALL OTHER PROCEDURAL REQUIREMENTS**

45.     <u>Removal is Timely</u>. This Notice of Removal has been filed within 30 days of March 18, 2025, the date Plaintiff attempted to serve the Complaint on Defendant and from which it was first ascertainable by Defendant that this case was removable. *See* 28 U.S.C. § 1446(b)(2)(3).

46.     <u>Venue</u>. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1441. This action was originally brought in the Superior Court for the State of California, Santa Clara County, which is embraced by the Northern District of California.

47. <u>Pleadings and Process</u>. All pleadings, processes, and orders received by the Defendant in the State Court Action or found on the docket in that action are attached to the Declaration of William H. Bohannon, as follows: Complaint (**Exhibit 1**); Summons and Service of Process (**Exhibit 2**); Civil Case Cover Sheet (**Exhibit 3**); Notice of Removal to Plaintiff (**Exhibit 4**); Order Deeming Case Complex and Staying Discovery and Responsive Pleading Deadline (**Exhibit 5**); and copy of the docket sheet from the State Court Action (**Exhibit 6**).

48. <u>Notice</u>. Concurrently with the filing of this Notice, the Defendant is giving written notice to all parties and is filing a copy of this Notice with the Clerk of Santa Clara County, California Superior Court. *See* 28 U.S.C. § 1446(d).

49. <u>Signature</u>. This Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure. <u>See</u> U.S.C. § 1446(a).

## VI. CONCLUSION

50. Based on the foregoing, Defendant respectfully request that the State Court Action be removed to the United States District Court for the Northern District of California. If any question arises as to the propriety of removal of the State Court Action, these Defendants respectfully request the opportunity to present argument and evidence in support of this removal.

WHEREFORE, Defendants hereby remove the State Court Action to this Court.

Dated April 17, 2025

        Respectfully submitted,

        O'HAGAN MEYER, LLP

        By _____
        SUMY KIM
        WILLIAM H. BOHANNON

        Attorneys for Defendant
        Total Safety U.S., Inc.

**CALIFORNIA STATE COURT PROOF OF SERVICE**
*Horacio Maya Jr. v. Total Safety U.S., Inc.*

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

At the time of service, I was over 18 years of age and not a party to this action. My business address is One Embarcadero Street, Suite 2100, San Francisco, CA 94111.

On April 17, 2025, I served true copies of the following document(s):

**DEFENDANT TOTAL SAFETY U.S., INC.'S NOTICE OF REMOVAL**

I served the documents on the following person(s) at the following addresses (including fax numbers and e-mail addresses, if applicable):

| | |
|---|---|
| John G. Yslas<br>Eugene Zinovyev<br>Gabrielle Sole<br>WILSHIRE LAW FIRM<br>3055 Wilshire Blvd., 12th Floor<br>Los Angeles, CA 90010<br><br>Tel: 213.381.9988<br>Fax: 213.381.9989<br><br>Email: john.yslas@wilshirelawfirm.com;<br>eugene.zinovyev@wilshirelawfirm.com;<br>gabriella.sole@wilshirelawfirm.com;<br>EugeneZinovyevsTeam@wilshirelawfirm.com | ***Attorneys for Plaintiff*** |

The documents were served by the following means:

☒ (BY ELECTRONIC MAIL) Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the person(s) listed on the Service List herein on this date. I did not receive within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 17, 2025, at San Francisco, California.

_____
Tanya Leal